CRAIG J. EMMERLING,

                          Plaintiff,

    -v-

TOWN OF RICHMOND, TOWN BOARD
SUPERVISOR ANGELO, COUNCILMAN/
TOWN BOARD MEMBER JOHN LUTHER,
Both individually and in their official capacity,
and DOUGLAS DULEN,

                          Defendants.

DECISION AND ORDER

09-CV-6418 CJS

APPEARANCES

For Plaintiff:
                  Christina Agola, Esq.
                  2100 First Federal Plaza
                  28 East Main Street
                  Rochester, New York 14614

For Defendants Town of Richmond,
Town Board Supervisor Angelo, and
John Luther:
                  Gerard E. O'Connor, Esq.
                  Lippman O'Connor
                  300 Olympic Towers
                  300 Pearl Street
                  Buffalo, New York 14202

For Defendant Douglas Dulen:
                  Craig Chartier, Esq.
                  Dibble & Miller, P.C.
                  55 Canterbury Road
                  Rochester, New York 14607-3436

## INTRODUCTION

Plaintiff alleges that the Town of Richmond ("the Town"), Town Supervisor Ralph

Angelo ("Angelo"), and Town Board Member John Luther ("Luther") (collectively "the Town

Defendants"), together with Douglas Dulen ("Dulen"), a private citizen, violated his federal

constitutional rights. Now before the Court are the following applications: The Town Defendants' motion [#3] to dismiss the complaint, Dulen's motion [#7] to dismiss the complaint, and Plaintiff's cross-motion [#13] to amend the complaint. For the reasons that follow, Defendants' motions are granted, Plaintiff's cross-motion is denied, and this action is dismissed.

BACKGROUND

Plaintiff, a former employee of the Town, brings this action following a series of incidents that occurred over several years and which culminated in the termination of his employment by the Town.[1] In 1988, Plaintiff was hired as a Recreation Specialist by the Town. Prior to 2006, Luther was the Chairman of the Town Planning Board. For some period of time ending in 2007, Luther's wife, RoseMary Kay Luther ("Mrs. Luther"), was the elected Town Clerk. At all relevant times Dulen operated an auto parts store at 8649 Main Street in the Town. Moreover, at all relevant times, Plaintiff and his wife ("the Emmerlings") operated a realty company at 8643 Main Street in the Town, next door to Dulen's auto parts store.

At some point prior to 2003, Mrs. Luther began operating a wine and liquor store in the Town, in a commercial property belonging to Dulen.[2] According to Plaintiff, the Luthers

---

[1]The incidents complained of in this action were not the first dispute between the Emmerlings and the Town of Richmond. Prior to 2004, the Emmerlings unsuccessfully sued the Town after problems arose involving the Town Code and the Emmerling's construction of a new dwelling. *See, Emmerling V. Town of Richmond*, 13 A.D.3d 1150, 787 N.Y.S.2d 754 (4th Dept. 2004).

[2]It is unclear whether this commercial property is the same commercial property that was adjacent to the Emmerling's commercial property, but the Court assumes that it is since there is no mention of Dulen owning any other commercial property.

are "friends" of Dulen. In February 2003, Mrs. Emmerling began operating a competing wine and liquor store on her adjacent property.

In 2005, a dispute arose between Dulen and the Emmerlings concerning their respective business properties. The Emmerlings believed that Dulen's customers and visitors were trespassing on their property. In particular, on at least one occasion, the Emmerlings complained about overflow parking and pedestrian traffic during a fundraiser that Dulen was hosting on his property to benefit the local school. Thereafter, Mrs. Emmerling met with the Superintendent of the Town School District, and requested that she be added as an additional insured on the school's insurance policies. In response, the School District adopted a rule requiring that all future school fundraisers be held on school property.

Subsequently, the Town granted Dulen permission to expand his auto parts store by constructing an addition on the side of the building adjacent to the Emmerling's property. Although Plaintiff alleges that such extension was improper under the Town Zoning Code (Complaint ¶ 33), it does not appear that he made any legal challenge to the project. Dulen's subsequent construction of the addition required the Emmerlings to relocate their water line, which had been located on Dulen's property. Plaintiff alleges that thereafter, "[b]eginning in November of 2005, " Dulen "began to engage in a pattern of intolerable harassment [of Plaintiff] and his family after a water line dispute." (Complaint ¶ 28).

In January 2006, Luther took office as an elected member of the Town Board.

On May 27, 2006, Dulen hosted a chicken barbecue fundraiser on his property to benefit the Mason's organization. Luther was one of the guests at the event. During the event, Dulen allegedly made a profane remark to Mrs. Emmerling's father, who had parked his vehicle in Dulen's "right of way." (Complaint ¶¶ 39-41). Plaintiff maintains that Luther was present when Dulen made the profane comment. Plaintiff subsequently became involved in a verbal exchange with one of Dulen's guests. (Complaint ¶ 48) ("Emmerling engaged the 'hecklers' by returning profane remarks."). As result, Plaintiff was charged with Harassment in the Second Degree. Plaintiff maintains that Dulen "provoked" the incident. (*Id*. at ¶ 47).

In June 2006, the Emmerlings began constructing a fence between their property and Dulen's property. During such construction, Dulen allegedly made profane sexual remarks to Plaintiff about Mrs. Emmerling. (Complaint ¶¶ 55, 60). Dulen also lodged a complaint about the fence with the Town Code Officer. (*Id*. ¶ 56). The Code Officer issued Plaintiff an appearance ticket, purportedly because part of the fence, consisting of concrete "flower boxes," blocked a fire lane. The ticket was later dismissed. However, the Zoning Board ruled that, with regard to the flower boxes, the Emmerlings were required to obtain a site plan review from the Town Planning Board. (*See, Id*. ¶ 71). The Emmerlings commenced a proceeding under New York Civil Practice Law and Rules ("CPLR") Article 78, and the New York State Supreme Court, Appellate Division Fourth Department, eventually reversed the Zoning Board's ruling, finding that the Town Code did not require

site plan approval for fences. (Memorandum and Order dated November 20, 2009, Case CA 09-01053).

On August 8, 2006, at a Town Board Meeting, Luther moved to initiate a disciplinary proceeding against Plaintiff, pursuant to New York Civil Service Law § 75, based on Plaintiff's conduct during the May 27, 2006 incident in which he was charged with Harassment in the Second Degree. (Complaint ¶ ¶ 77-78). There is no indication that the Town Board agreed to pursue any action against Plaintiff at that time.[3]

On August 15, 2006, while the Emmerlings were driving in their car, Dulen allegedly drove his vehicle toward them to force them off the road. (Complaint ¶ ¶ 79-80). On August, 16, 2006, Mrs. Emmerling overheard Dulen make a derogatory remark about her in a convenience store. (Complaint ¶ 81).

On August 18, 2006, while Plaintiff was on the Emmerling's property, Dulen made profane sexual remarks about Mrs. Emmerling, and Plaintiff responded with profanities. Plaintiff admits that "participated in the exchange." (*Id*. at ¶ 88). Apparently there was a minor on Dulen's property during the exchange of profanities between Dulen and Plaintiff. Dulen complained to the police, and Plaintiff was charged with Disorderly Conduct, for using "foul language in the presence of a minor." (*Id*. at ¶ 89). Plaintiff contends that the appearance ticket was issued by an Ontario County Sheriff's Deputy who was "Dulen's neighbor and friend." (*Id*. ¶ 89). Thereafter, Plaintiff pled guilty to both the Disorderly

---

[3]As discussed below, several months later the Town Board issued a Letter of Counsel in response to Plaintiff's convictions for Harassment and Disorderly Conduct. The Town did not pursue a Section 75 proceeding against Plaintiff until 2008, after he was charged with selling alcohol to minor.

Conduct charge, and the Harassment charge which stemmed from the May 27, 2006 incident. (*Id*. at ¶ ¶ 91, 95).

In January 2007, Angelo took office as the elected Town Supervisor. (*See*, Complaint ¶ ¶ 70, 97-98). On February 13, 2007, the Town Board issued Plaintiff a "Letter of Counsel," in response to his convictions for Harassment and Disorderly Conduct. (*Id*. ¶ ¶ 94-101). Although the entire contents of the Letter of Counsel are not in the record, the letter apparently referenced "a number of supposed parent complaints received by the [School District] regarding [Plaintiff's] guilty pleas" to Harassment and Disorderly Conduct. (*Id*. ¶ 107). The Letter of Counsel also contained the following statement:

> The Town Board is therefore very concerned that your conduct, as specified above, may be impairing your effectiveness as a Recreation Specialist for the Town. The Town Board is therefore counseling you that you must act at all times (including non-working times) in a manner which does not bring adverse publicity to the Town or raise questions as to your fitness to perform your duties as a Recreation Specialist for the Town. Your failure to do so in the future will lead to disciplinary action, up to and including termination from employment.

(Dulen's Motion to Dismiss, Exhibit B). The Town Board publicly acknowledged the issuance of the Letter of Counsel, and Plaintiff alleges that by doing so, the Town breached unspecified duties "to keep personnel records confidential." (Complaint ¶ 96).

At some time during 2007, Luther voted against reappointing Plaintiff as the Town's Recreation Specialist. (Complaint ¶ 24). However, the Town Board approved Plaintiff's continued employment.

In March 2008, Mrs. Luther closed her wine and liquor store, allegedly due to competition from Mrs. Emmerling's store. (*Id*. at ¶ ¶ 20, 111).

On June 27, 2008, Plaintiff sold liquor to a minor while working in Mrs. Emmerling's wine and liquor store. (*Id*. ¶ 112-114). The sale was observed by members of the Ontario County Sheriff's Department, who were conducting an undercover operation directed at Mrs. Emmerling's business and several other establishments. (*Id*. at ¶ 113) ("Several other Ontario County businesses were also charged as a result of this sting operation."). Plaintiff was arrested and charged with Unlawfully Dealing with a Child in the First Degree, in violation of New York Penal Law § 260.20. (Complaint ¶ 112; Dulen's Motion to Dismiss, Exhibit B). Plaintiff alleges that subsequently, at some unspecified time, the Town's attorney met with the Assistant Ontario County District Attorney who was prosecuting Plaintiff's case, and told the prosecutor that the Town did not want "any plea negotiations or reduction in charges" unless Plaintiff resigned as part of any such agreement. (Complaint ¶ ¶ 123-124). Plaintiff also alleges that the Town's Deputy Supervisor, Daryl Marshall ("Marshall"), met with the judge handling Plaintiff's case. (*Id*. ¶ 125). However, apart from stating that the meeting was "regarding Emmerling," Plaintiff does not indicate what occurred at the meeting. (*Id*.). The record does not indicate the disposition of the criminal charge.

On July 1, 2008, four days after Plaintiff was arrested, Angelo met with Plaintiff and placed him on a thirty-day paid administrative leave. (Complaint ¶ 117). Angelo told Plaintiff that "public pressure" was forcing him to suspend Plaintiff. (*Id*. at ¶ 118). Plaintiff though, contends that there was no such public pressure.

On July 8, 2008, the Town Board met for a regularly-scheduled meeting. At the meeting, the Board made the following statement to those attending: "The Town

Recreation Director, Craig Emmerling is on a 30-day administrative leave with pay, pending the outcome of an investigation for the provisions of Section 75, New York State Civil Service Law." (Complaint ¶ 126). Plaintiff indicates that the suspension was improper, because the Town Board never voted to suspend him.

At the conclusion of the thirty-day suspension period, on or about July 31, 2008, Plaintiff contacted the Town Clerk to arrange to return to work. However, the Town directed Plaintiff not to return to work . (Complaint ¶ ¶ 129-131).

On August 10, 2008, the Town served Plaintiff with a Notification of Charges pursuant to Civil Service Law § 75. (Complaint ¶ 132). The notice referred to two charges: 1) a charge relating to Plaintiff's sale of alcohol to a minor; and 2) a charge alleging that Plaintiff committed insubordination by violating the terms of the Letter of Counsel by selling alcohol to a minor. On August 12, 2008, the Town Board met and voted to place Plaintiff on a 30-day unpaid suspension. Dulen was present at the meeting and possessed a copy of the Letter of Counsel. (*Id*. ¶ ¶ 135-136).

On September 18, 2008, the Town Board notified Plaintiff that a Section 75 hearing would commence on October 2, 2008. (Dulen's Motion to Dismiss, Exhibit B). On October 2, 2008, the hearing began before a hearing officer. Plaintiff appeared at the hearing and was represented by an attorney. The hearing lasted for seven days. (*Id*.). On or about July 20, 2009, the hearing officer issued his decision. The hearing officer's decision is not before the Court, but he apparently recommended that Plaintiff's employment be terminated. (*See*, Dulen's Motion to Dismiss, Exhibit B at p. 4) (In its resolution terminating

Plaintiff's employment, the Town Board indicated that it was "confirm[ing] the Findings and Recommendations of the Hearing Officer in all respects.").

On August 3, 2009, the Town terminated Plaintiff's employment. In its resolution, the Town Board found that Plaintiff was guilty of both charges contained in the Section 75 complaint. The resolution further stated:

> The conduct of Craig Emmerling is serious, and outweighs any mitigating factors, which this Board has considered, including his years of service, and an otherwise positive employment history except for the matters subject to the February 13, 2007 Letter of Counsel.
>
> Termination is the appropriate penalty with respect to either one of these charges because: 1) Craig Emmerling's sale of alcohol to an underage individual is a serious offense; 2) the position of Recreation Specialist is a unique position of trust with respect to children and his sale of alcohol to an underage individual is inconsistent with that trust; 3) the person holding the position of Recreation Specialist needs to make sound judgments with respect to youth and act as a role model for youth, and Craig Emmerling's sale of alcohol to an underage individual showed extremely poor judgment and was inconsistent with his status as a role model; 4) Craig Emmerling's sale of alcohol to an underage individual, and his arrest for it, has led a number of people to lose trust in him and [to] question his fitness to be a positive role model for the youth are employed by and participate in the Town's Recreation programs; and 5) Craig Emmerling's sale of alcohol to an underage individual, and his arrest for it, have brought adverse publicity to the Town.

(Dulen's Motion to Dismiss, Exhibit B at p. 4). Plaintiff alleges that the termination of his employment was improper, because the Town Board never voted on whether to suspend him or whether to commence the Section 75 hearing. (Complaint ¶ ¶ 149-154) (citing New York Town Law § 63).

With regard to his termination, Plaintiff maintains that he was treated differently than other Town employees. For example, he contends that when Mrs. Luther's term of office as Town Clerk ended in December 2007, she left the Clerk's Office "in complete disarray,"

but "[n]o law enforcement officials were called, no investigation took place, and therefore no penalty was imposed on Mrs. Luther." (Complaint ¶ 140). Plaintiff further alleges that Dale Stumbo ("Stumbo"), the Town Highway Superintendent, was accused of unspecified "job-related misconduct" in 2005, and the Town Board passed a resolution to suspend him. Plaintiff complains that the Town Board never passed a resolution before suspending him or terminating his employment. (*Id*. at ¶ ¶ 144-146). Plaintiff further states that Jeff Miller ("Miller"), the Town Water Superintendent, "was involved in an altercation in the Town of Canadice," but "was not disciplined in any way." (*Id*. at ¶ 147). Plaintiff also contends that Miller "entered the Emmerling home without permission," but was not disciplined. (*Id*. ¶ 148). Plaintiff provides no further information about the alleged incidents involving Miller.

Plaintiff offers various reasons for the "vendettas" against him and his wife. For example, Plaintiff maintains that the harassment by Dulen began as a result of the "water line dispute." (Complaint ¶ 28). Plaintiff also contends that his wife's "liquor store is what instigated both the Dulen/Luther vendetta." [sic] (Complaint ¶ 31).

On August 18, 2009, Plaintiff commenced this action. Plaintiff's original Complaint (Docket No. [#1]) purports to state five causes of action: 1) a claim that Defendants conspired to violate his constitutional rights, in violation of 42 U.S.C. § 1985; 2) a claim that Defendants violated his Fourteenth Amendment Substantive Due Process rights by taking unspecified "property without due process of law"[4]; 3) a claim that Defendants violated his Fourteenth Amendment Substantive Due Process rights by taking his "property interest" in his job, in an arbitrary and unreasonable manner, through selective enforcement and

---

[4]Complaint ¶ 169.

disparate treatment; 4) a claim that Defendants violated his Fourteenth Amendment Equal Protection rights, by treating him "differently compared to others similarly situated to himself who were never disciplined for engaging in similar and worse conduct"[5] (Complaint ¶ 179); and 5) a claim that Defendants committed a Fourteenth Amendment "stigma plus" defamation injury against him on "August 23, 2005" [sic] while "terminating him from his long term position as Recreation Director." (Complaint ¶ 185).

On September 29, 2009, the Town Defendants jointly filed their subject motion to dismiss the Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). With regard to the conspiracy claim, the Town Defendants contend that the Complaint makes only "vague allegations." (Town Defendants Memo of Law at 1). Similarly with regard to the Due Process claims, the Town Defendants state that the Complaint is unspecific, and they note that Plaintiff "does not deny that . . . the subject Town had the right, pursuant to Civil Service Law § 75, to terminate his employment." (*Id*. at 2). As for the Equal Protection claim, the Town Defendants maintain that the Complaint fails to explain how the violation allegedly occurred. (*Id*. at 3). And finally, the Town Defendants indicate that the fifth cause of action is time barred, inasmuch as Plaintiff indicates that it arose on August 23, 2005, more than three years before this action was commenced.

---

[5]Plaintiff iterates that he is not asserting a "class of one" equal protection violation. (Complaint ¶ 180). Such a claim could not be maintained, since "the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a "class of one" theory of liability." *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (*citing Engquist v. Oregon Dep't of Agric.*, 553 U.S.591, 128 S.Ct. 2146, 2155-57, 170 L.Ed.2d 975 (2008)).

On October 26, 2009, Dulen filed his subject motion to dismiss the Complaint for failure to state a claim. Dulen denies that he had anything to do with the termination of Plaintiff's employment, and contends that such termination occurred because Plaintiff sold alcohol to a minor. Dulen further indicates that the Complaint fails to state claims for conspiracy, or for violations of Plaintiff's Due Process and Equal Protection rights.

On February 25, 2010, Plaintiff filed his opposition [#12] to the motions to dismiss. Generally, Plaintiff maintains that he has adequately pleaded claims upon which relief can be granted.[6] With regard to his Substantive Due Process claim, Plaintiff maintains that he had a property interest in his employment, and that Defendants arbitrarily deprived him of that property. With regard to his Equal Protection "selective enforcement"[7] claim, Plaintiff states that to prevail on such a claim, he must show two things: 1) that he was treated differently than "similarly situated persons"; and 2) that such disparate treatment "was based on impermissible considerations such as the intent to punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." ([#12] at 29). Plaintiff maintains that the decision to terminate his employment was based on a malicious,

---

[6] Citing a district court case from 2004, Plaintiff misstates the standard to be applied on a Rule 12(b)(6) motion. (Pl. Memo at 17) ("A motion to dismiss for failure to state a cause of action, pursuant to Fed.R.Civ. P. 12(b)(6), should only be granted if on the face of the complaint, it appears beyond doubt that Plaintiffs can prove no set of facts in support of his [sic] claim which would entitle them [sic] to relief. *Brewster V. Nassau County*, 349 F.Supp.2d 540, 545 (E.D.N.Y. 2004)"). Three years ago, the Supreme Court stated that this "no set of facts" language "has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007).

[7]

bad-faith intent to injure him, "because of the vendettas which were controlling the Board's egregious violations of law." (*Id.*). Plaintiff further alleges that he was treated differently than Mrs. Luther, Stumbo, and Miller. (*Id*. at 30). As for his stigma-plus claim, Plaintiff alleges that Defendants defamed him with the Letter of Counsel. Plaintiff alleges that such statement, along with the fact that Dulen possessed a copy of the letter, "place an unambigous burden on [his] future employment prospects." (*Id*. at 33). As for the alleged conspiracy between the Town Defendants and Dulen, Plaintiff states that it "is clear" that a plan existed between the Defendants. In that regard, he states: "Many people, including former councilman, [sic] Ralph Lustig and Town Board member Stephen Barnhoorn believed that the proximity and success of Mrs. Emmerling's liquor store is what instigated both the Dulen/Luther vendetta against Plaintiff." (*Id*. at 35).

At the same time, Plaintiff cross-moves for leave to amend his complaint. The proposed amended complaint is essentially identical to the original, except that it purports to state only four causes of action: 1) a claim that Defendants conspired to violate Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1985; 2) a claim that Defendants conspired to violate Plaintiff's Fourteenth Amendment substantive due process rights; 3) a claim that Defendants conspired to violate Plaintiff's Fourteenth Amendment equal protection rights ("selective enforcement" claim); and 4) a claim that Defendants committed a "stigma plus" Fourteenth Amendment due process violation against him on August 23, 2005.[8] (Proposed Amended Complaint ¶ 183).

---

[8]The date of August 23, 2005 is clearly not a typo, since after Defendants pointed out that the date was more than three years prior to the commencement of the action, Plaintiff repeated it, both in the proposed Amended Complaint and in his Memo of Law in Opposition to the Motions to Defend (Docket No. [#12]).

DISCUSSION

*FRCP 12(b)(6)*

With regard to the 12(b)(6) application to dismiss for failure to state a claim, the legal standard to be applied is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.[9] While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.

---

[9]Although the Court does not dismiss the Complaint on this ground, it notes that Plaintiff's Complaint is anything but short and plain. Instead, the Complaint is thirty-five pages (187 numbered paragraphs) long, and contains such irrelevant dross as this: "137. Community member Eileen Zola was present at that meeting. With her experience as a Rochester City school administrator, she was shocked to think that Dulen was allowed to possess a confidential document from a personnel file. It is her belief that someone from the Board provided the letter to Dulen." The Complaint sets forth 154 numbered paragraphs of allegations/opinions leading up to the "First Cause of Action." Then, Paragraph 155 states that it repeats and re-alleges each of the preceding paragraphs "as if fully set forth herein." Nevertheless, in paragraph 157, Plaintiff gratuitously regurgitates essentially all of the preceding factual allegations in a single four-page paragraph. (Complaint ¶ 157). Further, Plaintiff's Memo of Law in Opposition to the motions to dismiss inexplicably contains 14.5 pages of the very same allegations, essentially word for word, as contained in the Complaint and proposed Amended Complaint. (The allegations are then set forth yet again, in more condensed form, later in the memo – see. pp. 20-24). The inclusion of such unnecessarily repetitious information in Plaintiff's Memo of Law is even more incomprehensible, considering that it required Plaintiff's counsel to seek a ten-page extension of the page limits contained in Local Rule 7.1(f) from the Court. If the Court had known then why Plaintiff's counsel wanted the page-limit extension, it would have denied the request.

2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009).  When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.  In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

Even if a court grants a motion to dismiss, the plaintiff may request leave to amend the complaint to correct the deficiencies:

15

It is the usual practice upon granting a motion to dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion. Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted), *cert den.*, 503 U.S. 960, 112 S.Ct. 1561 (1992); *see also*, *Panther Partners Inc. v. Ikanos Communications, Inc.*, No. 08-3398-cv, 2009 WL 2959883 at *4 (2d Cir. Sep. 17, 2009) ("Granting leave to amend [would be] futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim.") (unpublished; citation omitted).

### *42 U.S.C. § § 1983 & 1985(3)*

The legal principles applicable to claims brought under 42 U.S.C. § 1983 are well settled:

In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).

\*\*\*

An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on

information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 122, 127 (2d Cir. 2004).

Generally, to assert a Section 1983 claim against an individual, the Plaintiff must allege that the individual acted "under color of state law." However, a non-governmental actor may act "under color of state law" in certain circumstances. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.") (citation omitted). On this point,

> [t]o state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. Put differently, a private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents. A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.

*Id*. at 324 (citations omitted).

As for imposing liability against a town or other municipality under Section 1983, the legal principles are also clear:

> In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The fifth element-the "official policy" element-can only be satisfied where a plaintiff proves that a "municipal policy of some nature caused a constitutional tort." *Id*. at 691, 98 S.Ct. 2018. "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

17

The Supreme Court has made clear that a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of respondeat superior.

***

Where a plaintiff seeks to hold a municipality liable for a single decision by a municipal policymaker, the plaintiff must show that the official had final policymaking power. Moreover, the challenged actions must be within that official's area of policymaking authority.

*Roe v. City of Waterbury*, 542 F.3d 31, 36 -37 (2d Cir. 2008) (citations and internal quotation marks omitted). A conclusory allegation of a municipal policy is insufficient to state a claim:

[Plaintiff] does not provide any facts in support of his conclusory allegation [that] the City's failure to properly train and supervise police officers amounts to a custom or policy, or that this custom or policy caused [his] injuries. . . . Simply, bald assertions and conclusions of law do not prevent the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6).

*Oparaji v. City of New York*, 1998 WL 432988 at *1 (2d Cir. Apr. 21, 1998) (Unpublished; citations and internal quotation marks omitted).

For claims alleging a conspiracy to violate one's civil rights under 42 U.S.C. § 1985(3), the pertinent legal principles are as follows:

In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation and internal quotation marks omitted). It is well-settled that vague or conclusory allegations of

conspiracy are insufficient to state a claim under 42 U.S.C. § 1985. *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("As this Court has previously held, however, a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.") (citation omitted).

The applicable statute of limitations for claims under 42 U.S.C. § § 1983 and 1985(3) is three years. *Clemmons v. Stuyvesant High Sch.*, No. 00 Civ. 4158(LMM), 2006 WL 4888057 at *4 (S.D.N.Y. Oct. 12, 2006) ("The applicable statute of limitations for 42 U.S.C. §§ 1983 and 1985(3) is three years from the date when the cause of action accrues.") (citation omitted).

With these general principles of law in mind, the Court will proceed to consider Plaintiff's claims.

*Plaintiff's Conspiracy Claim*

Plaintiff maintains that Defendants conspired "to make [his] life very difficult," and to violate his constitutional rights. (Complaint ¶ 21). However, Plaintiff offers no factual allegations to support a plausible claim that Defendants conspired to violate his federal constitutional rights.[10] Instead, Plaintiff merely indicates that Dulen and Luther are "friends" or "allies." (*See*, Amended Complaint ¶ 44). Plaintiff's allegations do not plausibly suggest that Dulen and Luther agreed to violate Plaintiff's constitutional rights, nor do they plausibly

---

[10]*See*, Propose Amended Complaint ¶ 159: "Based on the above stated facts [as described in this Decision and Order], a conspiracy was undertaken between Dulen[,] the Town of Richmond, in particular Councilman Luther and Supervisor Angelo to engage in acts to deprive Plaintiff of his rights under the United States Constitution, the laws of the United States of America, and the laws of the State of New York, in particular, his equal protection rights, his rights to due process and his rights not to be stigmatized in relation to the loss of his position."

suggest that Dulen was acting in concert with Luther or with the Town.  On the other hand,

Plaintiff does not allege that Luther and Dulen have any type of relationship with Angelo.

Neither does Plaintiff allege why Angelo would have any personal animosity toward him.

Nor does the Complaint set forth any facts suggesting that there was an agreement

between the Defendants.  For all these reasons, Plaintiff's cause of action under 42 U.S.C.

§ 1985 fails to state a claim, and is dismissed.

### *Plaintiff's Substantive Due Process Claim*

Plaintiff also claims that Defendants violated his Fourteenth Amendment

Substantive Due Process rights by terminating his employment.[11][12]  With respect to this

contention, "[f]or state action to be taken in violation of the requirements of substantive due

process, the denial must have occurred under circumstances warranting the labels

'arbitrary' and 'outrageous.'" *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.

1999).  Put another way,

> [s]ubstantive due process is an outer limit on the legitimacy of governmental
> action. It does not forbid governmental actions that might fairly be deemed
> arbitrary or capricious and for that reason correctable in a state court lawsuit
> seeking review of administrative action. Substantive due process standards

---

[11]*See*, Complaint ¶ ¶ 173-174 ("Craig Emmerling has at all times relevant to the proceeding possessed a 'property interest' in his job . . . .  The acts of the defendants . . . constitute a denial of Plaintiff's substantive rights under the Fourteenth Amendment to the United States Constitution."); *see also*, Plaintiff's Memo of Law in Opposition, at 2 ("The 'SECOND and THIRD CAUSES OF ACTION' set forth substantive due process violations[.]") .

[12]Plaintiff does not allege that Defendants violated his procedural due process rights.  Such a claim would fail in any event, since even if Defendants violated Plaintiff's rights under Civil Service Law § 75, he had an adequate post-deprivation remedy. *See, Pleickhardt v. Janoski*, No. CV 83-2314, 1989 WL 47705 at *4 (E.D.N.Y. Apr. 28, 1989) ("[S]ince plaintiff's challenge is not to the established procedures themselves, the availability of Article 78 review renders plaintiff's procedural due process claim fatally deficient.").

are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

*Id*. at 263; *see also, Okin v. Village of Cornwall-On-Hudson Police Dept*., 577 F.3d 415, 431 (2d Cir. 2009) (To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.").

The right to continued public employment is not a fundamental property interest that is subject to Substantive Due Process protection. *See, Martin v. Town of Brattleboro*,  No. 2:07-cv-260, 2008 WL 4416283 at *2-3 (D.Vt. Sep. 24, 2008) ("[M]ost Circuit Courts of Appeal have declined to find that a right to continued public employment is a fundamental property interest entitled to substantive due process protection. . . .  There is nothing in Martin's complaint or his submissions to the Court to suggest that his state-created right to continued employment as Brattleboro's Chief of Police is the type of fundamental Constitutional interest that could invoke the protection of substantive due process.") (citations omitted); *see also, Higgins v. City of Johnstown, N.Y.*, 20 F.Supp.2d 422, 428 -429 (N.D.N.Y. 1998) ("Even assuming the existence of a property right under the New York Civil Service Law, not every such right is entitled to the protection of Substantive Due Process. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). "While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, ... substantive due process rights are created only by the Constitution." *Id*."); *Engquist v. Oregon Dept. of Agr*., 553 U.S. at 591, 128 S.Ct. at 2156 ("[A] government's decision to

limit the ability of public employers to fire at will is an act of legislative grace, not constitutional mandate.").

Here, Plaintiff claims that he had a property interest in his continued employment with the Town, which was protected by Civil Service Law § 75. However, such property interest is not protected by the Substantive Due Process clause. Moreover, even if Plaintiff had alleged a sufficient property interest, he has not plausibly alleged that the Town Defendants' actions in terminating his employment were so egregious or outrageous that they shock the contemporary conscience. Accordingly, Plaintiff's substantive due process claims are dismissed.

### Plaintiff's Equal Protection Selective Enforcement Claim

Plaintiff also alleges an equal protection selective-enforcement claim. It is well settled that,

> [t]o establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following: (1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). "Any equal protection claim is grounded on a comparison between the treatment the state gives similarly situated individuals." *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d at 439. "Employees are similarly situated when they are 'similarly situated in all material respects.'" *Anderson v. Anheuser Busch, Inc.*, 229 F.3d 1135 (table), 2000 WL 1370266 at *1 (2d Cir. Sep. 19, 2000) (*quoting Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)).

At the outset, the Court finds that Plaintiff's "selective enforcement" claim is barred by the Supreme Court's decision in *Engquist*, which held that "the Equal Protection Clause does not apply to a public employee asserting a . . . "class of one" theory of liability." *Appel v. Spiridon*, 531 F.3d at 139 (2d Cir. 2008) (*citing Engquist v.Oregon Dep't of Agric.*, 553 U.S.591, 128 S.Ct. 2146, 2155-57, 170 L.Ed.2d 975 (2008)). In *Enquist*, a public employee alleged that "she was fired not because she was a member of an identified class . . . but simply for arbitrary, vindictive, and malicious reasons." *Engquist*, 128 S.Ct. at 2149. The Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." *Id.*, 128 S.Ct. at 2151. In doing so, the Supreme Court rejected the plaintiff's attempt to "constitutionalize the employment grievance[s]" of public employees, and stated: "Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of then." *Id.*, 128 S.Ct. at 2157.

The Second Circuit has not indicated whether "selective enforcement" claims involving public employment are permissible in light of *Engquist*. *See, Kamholtz v. Yates County*, 350 Fed.Appx. 589, 591, 2009 WL 3463481 at *1 (2d Cir. 2009) ("Thus, even assuming that appellant, a public employee, is not precluded from pursuing a selective enforcement claim, *see Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), he nevertheless has failed to sufficiently state his claim."); *see also, Balakrishnan v. Kusel*, No. 08-cv-1440 (BMC), 2009 WL 1291755 at *6 (E.D.N.Y. May 8, 2009) ("[I]t is not entirely clear whether the selective enforcement cause of action as articulated in *LaTrieste* still exists in light of the Supreme Court's "class of one"

jurisprudence as set forth in *Engquist, supra*, and *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)").

However, the Court believes that the rationale of *Engquist* applies to selective enforcement claims by public employees. Moreover, as the Supreme Court noted, "public employees typically have a variety of protections from just the sort of personnel actions about which [Plaintiff] complains, but the Equal Protection Clause is not one of them." *Engquist*, 128 S.Ct. at 2157. In this case, Plaintiff had the protection of Civil Service Law § 75 and CPLR Article 78. *See*, CIVIL SERVICE LAW § 76(1) (Indicating that an employee aggrieved by an employment action under Section 75 "may appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight of the civil practice law and rules."). Consequently, Plaintiff's "selective enforcement" claim is barred by *Engquist*.

Even assuming that Plaintiff could properly pursue a selective enforcement claim involving public employment in the wake of *Engquist*, he has failed to state a claim upon which relief can be granted, since it is clear from his own factual averments that he is not similarly situated with Mrs. Luther, Stumbo, or Miller. As discussed above, Plaintiff's factual allegations show that the circumstances involving Mrs. Luther, Stumbo, and Miller, are entirely dissimilar from those involving himself. For example, Mrs. Luther was allegedly an elected official, not a Town employee. As for Stumbo and Miller, there is no indication that either person worked with children as part of their employment, or that they were charged or convicted of any criminal offense, let alone a criminal offense involving a minor.

Instead, Plaintiff alleges that Stumbo was "charged with [unspecified] job-related misconduct," and that Miller was "involved in an altercation" in a neighboring town. Unlike these others, Plaintiff's job involved working with minors; he had pled guilty to Harassment and Disorderly Conduct; he had been warned that future incidents of misconduct could lead to the termination of his employment; and he was subsequently charged with Unlawfully Dealing with a Child for admittedly selling alcohol to a minor. Moreover, in light of Plaintiff's convictions, and the close temporal proximity between his arrest and the Town's commencement of disciplinary proceedings, Plaintiff's allegation that the Town's action was motivated by unrelated personal vendettas is not plausible. Accordingly, the Equal Protection selective enforcement claim is dismissed.

### *Plaintiff's Stigma-Plus Claim*

To state a procedural due process "stigma plus" liberty interest claim, a plaintiff must allege: "(1) that [he] possessed a cognizable liberty interest, and (2) that the defendants deprived [him] of that same liberty without providing process adequate to justify their actions." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). The Second Circuit has further described this type of claim as follows:

> A § 1983 liberty interest claim of this sort-commonly referred to as a "stigma plus" claim, requires a plaintiff to allege (1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement. The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest. Similarly, because a free-standing defamatory statement is not a constitutional deprivation, but is instead properly viewed as a state tort of defamation, the "plus" imposed by the defendant must be a specific and adverse action clearly restricting the

plaintiff's liberty-for example, the loss of employment, or the termination or alteration of some other legal right or status.

In a typical "stigma-plus" case, the stigmatizing statement originates from the same state actor who imposes the "plus," such as when a government employer defames an employee in the course of terminating that employee.

*Id*. at 87-88 (citations and internal quotation marks omitted). Where the plaintiff has been

terminated from public employment, the following principles apply:

In an action based on a termination from government employment, a plaintiff must satisfy three elements in order to demonstrate a deprivation of the stigma component of a stigma-plus claim. First, the plaintiff must show that the government made stigmatizing statements about him-statements that call into question the plaintiff's good name, reputation, honor, or integrity. We have also said that statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession will satisfy the stigma requirement. Second, a plaintiff must prove these stigmatizing statements were made public. Third, the plaintiff must show that the stigmatizing statements were made concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment.

*Segal v. City of New York*, 459 F.3d 207, 212 -213 (2d Cir. 2006) (citations and internal

quotation marks omitted).

"If a plaintiff successfully proves his stigma-plus claim, due process requires that as

a remedy he be given a post-deprivation opportunity to clear his name." *Patterson v. City of

Utica*, 370 F.3d 322, 330 (2d Cir. 2004). As the Second Circuit has indicated, "[t]he risk

inherent in a stigma-plus claim is the risk that the false charges against the plaintiff will go

unrefuted and that his name will remain stigmatized." *Id*. at 336.

In this case, Plaintiff's stigma-plus claim must be dismissed because it is time-

barred by the applicable three-year statute of limitations. In that regard, as discussed

earlier, Plaintiff has repeatedly maintained that the injury occurred on "August 23, 2005,"

which was more than three years before he commenced this action. (Complaint ¶ 185; Memo of Law in Opposition to Motions to Dismiss at p. 2; Proposed Amended Complaint ¶ 183).[13] Alternatively, the claim must be dismissed because Plaintiff has not alleged that Defendants made a false statement about him. To the contrary, the statements that were made about Plaintiff in connection with his employment were true: Plaintiff pled guilty to Harassment and Disorderly Conduct, and he was charged with Unlawfully Dealing with a Child after he sold alcohol to a minor. Plaintiff admits these facts as part of his Complaint, and the incidents were matters of public record.

Finally, even assuming that Defendants had made a false statement about Plaintiff, his stigma-plus claim fails because he had an adequate post-deprivation remedy available to him, in the form of an Article 78 proceeding. *See, Segal v. City of New York*, 459 F.3d at 214 ("[T]he availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim[.]"); *Rivera v. Community School Dist. Nine*, 145 F.Supp.2d 302, 308 (S.D.N.Y. 2001) ("New York's Article 78 proceeding has been held to be an adequate postdeprivation remedy. . . . Rivera can seek the redress she desires-an opportunity to clear her name-through an Article 78 proceeding.") (citations omitted).

*Plaintiff's Cross-Motion to Amend*

---

[13]At oral argument, Plaintiff's counsel maintained, for the first time, that Plaintiff's repeated reference to August 23, 2005, was a typographical error. The Court finds this statement implausible, particularly since the reference was made in three separate documents, two of which were prepared in response to Defendants' motion to dismiss the claim as untimely.

Plaintiff does not maintain that her motion to amend is necessary to defeat Defendants' motions to dismiss. Instead, Plaintiff indicates that the proposed amended complaint will do three things: 1) correct a typographical error concerning the number of years that Plaintiff worked for the Town; 2) streamline the causes of action and consolidate the substantive due process claims; and 3) amplify the stigma-plus claim by "adding statements made to the press in conjunction with Plaintiff's termination." (Agola Declaration, ¶ 3; Proposed Amended Complaint ¶¶ 155-157). Plaintiff was notified of the Complaint's deficiencies by Defendants' moving papers. Nevertheless, the proposed Amended Complaint is essentially identical in all material respects to the original Complaint. The Court's discussion concerning the deficiencies of the Complaint therefore applies equally to the Proposed Amended Complaint. Consequently, the proposed amendment would be futile, and the cross-motion to amend is denied.

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss [#3][#7] are granted, Plaintiff's cross-motion to amend [#13] is denied, and this action is dismissed with prejudice.

SO ORDERED.

Dated:      July 23, 2010
            Rochester, New York

                                    ENTER:


                                     /s/ Charles J. Siragusa_____
                                    CHARLES J. SIRAGUSA
                                    United States District Judge